We next hear Smith v. Wells Fargo Bank. RANDALL NEWMAN, ATTORNEY FOR THE APPELLANT, ALISON SMITH, DISTRICT COURT Good morning. May it please the Court, my name is Randall Newman, attorney for the appellant Alison Smith. We are here to appeal the District Court's decision dismissing the plaintiff's complaint which sought to rescind her loan under the Truth in Lending Act. The issue really in this case is when was this loan consummated, an issue which usually doesn't arise because you would have a wrong table closing, but in this case it was a completely by mail closing and there's no cases in the country really that have dealt with this issue when does she become liable on the mortgage. Which the District Court found, well, two different findings, one he said that she became liable the date she signed it, which there's no evidence of the record when she actually returned it. So we don't believe that can possibly be the date. She had a deadline for returning it, which was the 26th, right? And she said, she testifies that she signed it on the 13th and sent it a few days later. I mean, the 26th is two weeks later. Why isn't the only plausible inference here that she had a deadline of the 26th, the loan was funded, that she met the deadline? And so when they took the position that it was consummated on no later than the 26th, which gave her until the 29th, that that's the only inference the record will admit. Why isn't that the case? Under the Connecticut statute of frauds, they're not bound by the loan because they didn't sign any documents. So she could not enforce it. But we're not talking about them being bound. We're talking about her being bound. Well, under Connecticut law, you need mutual assent of both parties. So you need both parties to be bound. But they performed. They performed, yeah. They didn't perform until... They gave her the money.  That's performance. But they didn't perform until the end of March. But that's not the consummation. You know, Connecticut law also talks about this, and it has to do with when she became obliged. We don't know the date she became obliged because we don't know the date she returned the... Well, let me go back. Why isn't it that she returned it at least by the 26th? Because that was her deadline, and then it was funded. Otherwise, you're asking for an inference that they excused a late submission by her. She's never testified that she sent it after the 26th. She hasn't testified to anything yet. Well, the statement in the papers is that she mailed it a few days later. A few days after she signed it on the 13th. Correct. But under Connecticut law, both parties have to be bound before there's a contract. So her returning it does not create a contract. They have to accept it. Which they did. But they didn't accept it until the end of March. The deal was if you sign this and return it, we have a contract. I disagree. I think that her mailing was the offer that they had to accept. Because in the letter, the Lewis letter, they reserved the right to... They sent her a whole bundle of documents, the HUD ones, the note, and so forth. And she had to execute them and send them back. And... They reserved... It sounds like an acceptance of an offer to me. But they reserved the right not to fund the loan. Under certain conditions. Under certain conditions, which didn't occur. But they could have occurred. They reserved the right to not fund the loan. The program changed? Or they got information that contradicted what was in her application? We believe that her sending the documents was the offer that they had to accept. They had to approve... Theirs is the offer. Hers is the acceptance. I mean, you know, you said to us they have to accept. Under Connecticut law, it's when the proposition of one party is accepted by another. It's the bank's proposition, and she now signs and accepts it. I disagree. I think that her sending those documents is the offer that they have to accept. What case would you have us look at to support that proposition on a loan? I think it's a factual issue, not a legal issue. How is that so, when they sent her all the documents that explain all the terms of the loan? That looks like the proposition to us, and then she's asked to sign and agree that those will be the terms of the loan. She couldn't have enforced that loan if, say, they didn't fund. She couldn't have done anything about it because they didn't sign anything. So under the Connecticut statute of frauds, she couldn't enforce that loan. So if she can't enforce the loan, there can't be a contract. We're not in that situation. I think there might be an argument to the contrary, but go ahead. Well, the question is when was the date of consummation? Which the court didn't even decide. All he said was, well, she must have returned it by the 26th. We still don't even know the date of consummation. So how is a borrower supposed to know? This is all about whether she got notice. Correct. TILA. And the notice they gave her was, it's going to be consummated on the 26th because that's the deadline we're giving you, and you have until the 29th to do it. And you're saying, you know what, that wasn't accurate. And so now we want two years in order to walk away from this loan. And I don't understand how that's at all what this statute is meant to deal with, with a party who signs on the 13th and says she's mailed it within a few days. And who then gets the loan. We actually want three years, not two years. But the problem is that the documents are all dated different dates. You have the TILA disclosure statement dated March 8th. You have the note and the mortgage dated the 31st. You have the HUD-1 dated the 31st. And they put this date of the 26th on the notice of right to cancel. Why didn't they just put the 31st, which is the date they funded? That was the date of the loan, not the 26th. That wasn't the date of the consummation. That was just some random date. How is any borrower supposed to know when their rescission period expires with the documents they were given, she was given? I don't think anyone would know. We're still arguing about when the date of consummation. The judge didn't even decide when the date of consummation was. All he says, well, you must have returned it by the 26th. So the whole point is clear and conspicuous notice to the borrower. And I don't think that occurred here. Anything else? No, ma'am. Thank you. May it please the Court. My name is David Bizar and I represent the Defendant Appley, Wells Fargo Bank. Smith brought this lawsuit against Wells Fargo seeking to rescind her mortgage loan under the Truth in Lending Act two and a half years after it was funded. The district court correctly held that Smith accepted Wells Fargo's offer on March 13, 2012 when she signed the loan papers and agreed to be bound by them. This was 16 calendar days before the stated March 29 deadline. Smith claims only that the NRC, the Notice of Right to Cancel, did not properly identify, quote, the date the rescission period expires, unquote, as required by the regulation, which was part of TILA Reg Z. The Notice of Right to Cancel said that it expired on March 29, 2012, but Smith insists that it did not expire until February 4. However, she failed to allege any facts that make a plausible showing that Wells Fargo's disclosures were inaccurate. She had multiple attempts to try. This was the second amended complaint that was ultimately dismissed. There was a motion for judgment to dismiss in the pleadings filed against the first one. They then amended the complaint in response to that. Then there was a motion to dismiss filed against that amended complaint, and then they filed another amended complaint for that. Sotomayor, I understand the argument. Their view is that it's not consummated. Even when she sends it in, it required action by Wells Fargo, which they did not take until the 31st, or you did not take until the 31st. What's your response to that? So you need to look no further than the Sycharis case out of the Connecticut Appellate Court, because they make a fatal admission in their papers. On page 19 of their brief, they say that this contract could not have been, was not illusory. They admit it was not an illusory contract. If the contract was not illusory and couldn't be avoided on a whim, then this was a legal and binding contract, and they admit it was performed, so we don't have an issue there. So the only thing that you would be looking at at that point is, is that how did that contract get formed? What was the date of formation? And it's really easy to figure out when this contract was formed, because you have a case out of this circuit deciding that, which is the Murphy case. Quote, a contractual relationship is created between creditor and customer when the former proffers credit and the latter accepts, irrespective of the time of performance of the contract itself, unquote.  So that's what we're looking at, is when was it accepted? Not when it was performed. The performance things, the entire red herring, it's completely irrelevant, because those are conditions subsequent. And we briefed that in our brief extensively as to how they're conditions subsequent, the things about performance. The statute of frauds complete, again, red herring. Under Connecticut law, the statute of frauds has, first of all, nothing to do with contract formation. Let me be clear about that. The statute of frauds has nothing whatsoever to do with contract formation under Connecticut law. It has to do with enforcement of contracts. And what it says is, is that the party who is to be charged must sign that. And under Connecticut law, and we've briefed this in our brief, what that means is not the party who is either the promisor or the promisee, but the party who is going to be charged with it in court. And Connecticut case law has examined the question of whether that applies, this is the Crandus case, whether that applies when we're talking about the lender. And, you know, here the lender makes an offer in writing. So you have a writing from the lender that makes the offer. And then the offer requires a signature from the borrower, and only from the borrower. And if you look in the record, if you look at the actual document itself, the note and the mortgage, neither of them have a signature block for the lender. I will tell you, no lender ever signs a consumer mortgage. And you can look at the note and mortgage forms. The note form is a standard, it says right at the bottom of it, it's a standard form. I forget if it was Fannie Mae or Freddie Mac, but I think it's Fannie Mae off the top of my head, but it's one or the other. And they're never signed by the lenders, ever. And the mortgages under Connecticut law expressly by statute do not require a signature by the lender. And that is talked about, I believe, in the Crandus case, which is a Connecticut Superior Court case. Let me ask you this. I'm not sure you, I don't recall whether you discussed it at any length in your brief, but does Connecticut have a mailbox law that makes the effective data of a contract, not necessarily when you sign it, but when you post it? So it's not briefed. Connecticut does have a mailbox rule. The mailbox rule in Connecticut is simply a presumption. It's a legal presumption that says that when you have testimony in a case that a letter was placed in the first class mail in a U.S. post box, that there is a presumption of receipt. That's the only thing that the mailbox rule does under Connecticut law. It would not have anything to do with contract formation. But you're suggesting that even if there could be an argument that the 13th, the day she signed, is the date of consummation, that you're not pressing that because your agreement gave her until the 26th and that you're saying that the only inference of mailing is that it happened before that date because it was the deadline? Did I understand your brief correctly? Mostly, Your Honor. What I'm saying is that it's actually irrelevant. The date of consummation is the date of signing. That's what the district court held. It was a correct conclusion. The district court said it didn't have to conclusively decide that. That's true, Your Honor. But I think if you read the opinion, the district court appeared to use language that said that was where it was going. I understand. But let's take that as the date for purposes of argument to answer Your Honor's question. The contract is consummated on the date that it's signed. That's consistent with this Court's opinion in Murphy v. Empire. Everything else has to do with performance. So when we're talking about her putting it in the mail, the letter that accompanied the notice of right to cancel, which is at page 829 of the joint appendix, had some conditions in it. It said, quote, we ask that you please return the completed, fully signed, and notarized sign-and-return package by March 19, 2012, by the express delivery carrier, envelope enclosed, in order to start saving money every month, unquote. Later in the document, it states that your new mortgage, this is quote, your new mortgage loan will fund as of the date on the note, after Wells Fargo Bank N.A. receives your express delivery package and reviews it to make sure it was completed and correctly signed. If there are any discrepancies found during our review process, you will be immediately contacted. It continues a little further, quote, in order to disperse your new loan as scheduled, your properly executed closing package must be mailed via express delivery carrier no later than March 26, 2012. If you cannot mail the sign-and-return package by this date, the current loan transaction cannot be completed under the terms of these closing documents. And then it continues from there. And the import of all that, Your Honor, is that it is a condition subsequent to performance. And so if she doesn't return, the contract's already been formed. If she doesn't return this in the time allotted, then that condition fails and Wells Fargo doesn't have to fund the loan. That's our position. Anything else? And if there are no further questions, that concludes my argument. Thank you. Thank you. Newman, you have some rebuttal time. I want to make two points. First, Wells Fargo relies on the Murphy case for the proposition that once she signs the mortgage, it becomes a contract. But in the Murphy case, the lender had signed the commitment letter, so when she signed, both parties had to sign, and so there was mutual assent by both parties. You know, they've argued. They sent the offer in writing. And the Code of Federal Regulations on this point, on TILA, says that consummation focuses on when the consumer becomes contractually obligated on a credit transaction. And there's case law that has said that, that out of other circuits, the Fourth, the Eleventh, but even we've said the focal point for possible reconsideration by the borrower is when he becomes contractually bound, which normally occurs when he signs the commitment. I don't see any precedent to support the view that the determinative date is otherwise. Had she signed the loan documents and never returned them, would the consummation date still be March 13th? It couldn't possibly be March 13th if she didn't return them. Well, it doesn't matter here because they gave her until the 26th, and we know that it got sent. But my point is I don't see any law that supports the view of this you want us to adopt. How about if she returned the documents and Wells Fargo didn't fund the loan? Is she going to be liable on a mortgage they never funded? The real question here is when she had the ability to turn her back on this, to rescind. And, you know, it's you're saying three days after the 26th is not accurate. We're saying it's not clear and conspicuous when the closing occurred and when her rescission period really expired. We still don't even know the date of the consummation. We don't even the Court hasn't decided the date of the consummation, so how is she supposed to know the date of the consummation? All these documents are dated different dates, the 31st, the March 8th, the 26th. How is any consumer supposed to know the date it really expires? Well, as I said to you, there's ample precedent that it's the date the consumer signs and becomes obligated, both in case law and in the applicable regs. All those cases deal with roundtable closings where everybody's sitting at a table, she signs the documents, and she gives them to the bank. It doesn't deal with a mail closing because if she didn't return those documents, she can't possibly be bound on March 13th. But I understand, I agree that in a roundtable closing, it's when she signs because the person's going to be there to accept it. But if she holds it for 15 days, she's not liable on that morning. If they don't fund, she's not liable. She can't even sue them. But she sent it in and she got funded. She's not liable until they fund. All right, thank you. Thanks. We're going to take the case under advisement, try and get you a decision soon.